

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRIS BONSANGUE, on behalf of himself and other similarly situated drivers, | Case No. CV 20-11169 FMO (RAOx) |
| Plaintiff, | **ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| FERRELLGAS, INC., et al., | |
| Defendants. | |

Having reviewed and considered all the briefing filed with respect to plaintiff's Third Renewed Motion for Preliminary Approval of Class Action and PAGA Settlement and Class Certification (Dkt. 62, "Motion"), and the oral argument presented at the hearings on December 9, 2021, February 24, 2022, May 12, 2022, and August 11, 2022, the court concludes as follows.

## BACKGROUND

On October 2, 2020, plaintiff Chris Bonsangue ("Bonsangue" or "plaintiff"), who was employed by defendants as an hourly non-exempt driver, filed a putative class action complaint in state court against Ferrellgas, Inc., Ferrellgas, L.P., and Blue Rhino LLC asserting claims for: (1) failure to pay wages for all hours worked at minimum wage in violation of Cal. Labor Code §§ 1194, 1197; (2) failure to authorize or permit meal periods in violation of Cal. Labor Code §§ 512 & 226.7; (3) failure to authorize or permit rest periods in violation of Cal. Labor Code § 226.7; (4) failure to provide complete and accurate wage statements in violation of Cal. Labor Code § 226;

(5) failure to timely pay all earned wages and final paychecks due at the time of separation of employment in violation of Cal. Labor Code §§ 201, 202, and 203; and (6) unfair business practices, in violation of Cal. Bus. & Prof. Code §§ 17200, et seq. (Dkt. 3-1, Complaint). Plaintiff alleged that defendant[1] violated California wage and hour laws by (1) requiring plaintiff and similar drivers to undergo off-the-clock drug testing; (2) rounding down the hours worked to the nearest quarter hour; (3) requiring plaintiff and similar drivers to work on-call without payment; and (4) requiring plaintiff and similar drivers to guard their trucks and stay within 100 feet of them during their meal periods. (Id. at ¶ 17). On December 9, 2020, defendant removed the action on CAFA and federal question (preemption) grounds. (Dkt. 1, Notice of Removal).

On May 17, 2021, pursuant to stipulation, the court stayed the action to allow the parties to pursue settlement discussions. (See Dkt. 22, Court's Order of May 17, 2021). On September 2, 2021, the parties participated in a mediation and reached a settlement. (See Dkt. 23, Joint Post-Mediation Status Conference Statement); (Dkt. 62-1, Memorandum of Points and Authorities in Support of Plaintiff's Third Renewed Motion for Preliminary Approval of Class and PAGA Action Settlement and Class Certification ("Memo") at 4); (Dkt. 62-2, Declaration of Melissa A. Huether in Support of Plaintiff's Third Renewed Motion for Preliminary Approval of Class and PAGA Action Settlement and Class Certification ("Huether Decl.") at ¶ 8). On March 22, 2022, in connection with the settlement, plaintiff filed the operative First Amended Complaint ("FAC"), which added a claim for penalties pursuant to the California Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698, et seq.[2] (Dkt. 53, FAC at ¶¶ 80-110); (Dkt. 62-1, Memo at 3).

The parties have defined the settlement class as "all individuals who are or previously were employed by Defendant in the State of California who worked as a non-exempt driver at any time from October 2, 2016 through November 1, 2021, with the exception of individuals who were

---

[1] Blue Rhino LLC and Ferrellgas, L.P. were subsequently dismissed without prejudice. (See Dkts. 15, Notice of Dismissal); (Dkt. 20, Notice of Dismissal). Thus, the court will refer to defendants in the singular.

[2] On February 19, 2021, plaintiff filed a separate action in state court asserting a single claim for penalties pursuant to PAGA. (See Dkt. 62-1, Memo at 3).

employed by Defendant in the position of Driver Bulk & Cylinder, Driver I Cylinder A, Driver I Bulk & Cylinder B, Driver Tank Exchange, and/or Driver II Transport A only, and at no time on or after September 15, 2019, whose claims were released pursuant to the settlement in <u>Price v. Ferrellgas, Inc.</u>, Southern District of California Case No. 37-2018-00022075-CU-OE-CTL." (Dkt. 62-3, Second Amended Joint Stipulation of Class Action Settlement and Release Between Plaintiff, on Behalf of Himself and All Others Similarly Situated and Aggrieved, and Defendant ("Settlement Agreement") at ¶ 15). "The Settlement Class also does not include any other person who previously settled or released any of the claims covered by this Settlement, or any other person who previously was paid or received awards through civil or administrative actions for the claims covered by this Settlement." (<u>Id.</u>).

Pursuant to the settlement, defendant will pay a non-reversionary gross settlement amount of $190,000, (Dkt. 62-3, Settlement Agreement at ¶ 26); (Dkt. 62-1, Memo at 5), which will be used to pay class members, the class representative's service payment, settlement administration costs, the PAGA payment to the California Labor & Workforce Development Agency ("the LWDA"), and attorney's fees and costs. (Dkt. 62-3, Settlement Agreement at ¶¶ 26-27). The settlement provides for up to $47,500 (25% of the gross settlement amount) in attorney's fees, (<u>id.</u> at ¶¶ 12, 50); costs not to exceed $10,000, (<u>id.</u>); a service payment of $5,000 for plaintiff, (<u>id.</u> at ¶¶ 18, 51); and a payment of $14,250 to the LWDA. (<u>Id.</u> at ¶ 24). Also, the proposed settlement administrator, Simpluris, Inc. ("Simpluris"), will be paid no more than $7,500 from the gross settlement amount.[3] (<u>Id.</u> at ¶¶ 42, 55). The resulting net settlement amount is expected to be $98,000.[4] (Dkt. 62-1, Memo at 6). The net settlement amount will be allocated based on the

_____

[3]  Although the Settlement Agreement provides that "[t]o the extent actual Settlement Administration Costs are greater than $7,500, such excess amount will be deducted from the Maximum Settlement Amount[,]" (Dkt. 62-3, Settlement Agreement at ¶¶ 42, 55), plaintiff represents that "[t]he parties agree to seek Settlement Administration Costs in the amount not to exceed $7,500.00." (Dkt. 62-1, Memo at 8).

[4]  The net settlement amount includes $3,000 in estimated payroll taxes. (Dkt. 62-1, Memo at 6).

1 | number of workweeks each class member worked during the class period.[5]  (Id.); (Dkt. 62-3,

2 | Settlement Agreement at ¶ 56).

3 |     In his Motion, plaintiff seeks an order (1) preliminarily approving the proposed settlement;

4 | (2) certifying the proposed settlement class; (3) appointing Bonsangue as class representative;

5 | (4) appointing Joseph Lavi ("Lavi"), Vincent Granberry ("Granberry"), and Courtney Miller ("Miller")

6 | of Lavi & Ebrahimian, LLP class counsel; (5) appointing Simpluris as settlement administrator; (6)

7 | approving and ordering dissemination of the proposed class notice and forms; and (7) scheduling

8 | a final approval hearing.  (See Dkt. 62, Motion).

9 | **LEGAL STANDARDS**

10 | I.    CLASS CERTIFICATION.

11 |     At the preliminary approval stage, the court "may make either a preliminary determination

12 | that the proposed class action satisfies the criteria set out in Rule 23 . . . or render a final decision

13 | as to the appropriateness of class certification."[6] Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149,

14 | *3 (S.D. Fla. 2010) (citation and footnote omitted); see also Sandoval v. Roadlink USA Pac., Inc.,

15 | 2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620,

16 | 117 S.Ct. 2231, 2248 (1997) ("Amchem")) ("Parties seeking class certification for settlement

17 | purposes must satisfy the requirements of Federal Rule of Civil Procedure 23[.]").  In the

18 | settlement context, a court must pay "undiluted, even heightened, attention" to class certification

19 | requirements.  Amchem, 521 U.S. at 620, 117 S.Ct. at 2248; In re Volkswagen "Clean Diesel"

20 | Mktg., Sales Pracs., & Prods. Liab. Litig., 895 F.3d 597, 606 (9th Cir. 2018) (same).  "Such

21 | attention is of vital importance, for a court asked to certify a settlement class will lack the

22 | opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as

23 | they unfold."  Amchem, 521 U.S. at 620, 117 S.Ct. at 2248.

24 |

25 |

26 |    [5] The PAGA settlement amount will be distributed "based on the number of pay periods each
| [class member] worked during the period from September 29, 2019 through November 1, 2021[.]"

27 | (Dkt. 62-3, Settlement Agreement at ¶ 56(d)).

28 |    [6] All "Rule" references are to the Federal Rules of Civil Procedure.

A party seeking class certification must first demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Courts refer to these requirements by the following shorthand: "numerosity, commonality, typicality and adequacy of representation[.]" Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012), overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651 (9th Cir. 2022) (en banc) ("Olean Wholesale"). In addition to fulfilling the four prongs of Rule 23(a), the proposed class must meet at least one of the three requirements listed in Rule 23(b).[7] See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011) ("Dukes").

---

[7] Rule 23(b) is satisfied if:

(1) prosecuting separate actions by or against individual class members would create a risk of:
　　(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
　　(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
　　(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
　　(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
　　(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
　　(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(1)-(3).

"Before it can certify a class, a district court must be satisfied, after a rigorous analysis, that the prerequisites of both Rule 23(a) and" the applicable Rule 23(b) provision have been satisfied. Olean Wholesale, 31 F.4th at 664 (internal quotation marks omitted).  A plaintiff "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." Id. at 665.  However, the Rule 23(b)(3) issues regarding manageability are "not a concern in certifying a settlement class where, by definition, there will be no trial." In re Hyundai and Kia Fuel Econ. Litig., 926 F.3d 539, 556-57 (9th Cir. 2019) (en banc) ("In re Hyundai").

II.    FAIRNESS OF CLASS ACTION SETTLEMENT.

Rule 23 provides that "[t]he claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Just. v. Civ. Serv. Comm'n of the City & Cty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982).  Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (internal quotation marks omitted).

Approval of a class action settlement requires a two-step process – preliminary approval and the dissemination of notice to the class, followed by a later final approval. See Spann v. J.C. Penney Corp., 314 F.R.D. 312, 319 (C.D. Cal. 2016).  Although "[c]loser scrutiny is reserved for the final approval hearing[,]" Harris v. Vector Mktg. Corp., 2011 WL 1627973, *7 (N.D. Cal. 2011), "the showing at the preliminary approval stage – given the amount of time, money, and resources involved in, for example, sending out . . . class notice[] – should be good enough for final approval." Spann, 314 F.R.D. at 319; see 4 Newberg on Class Actions § 13:10 (5th ed.) (Supp. 2021) ("[S]ending notice to the class costs money and triggers the need for class members to consider the settlement, actions which are wasteful if the proposed settlement [is] obviously deficient from the outset.").  The court may grant preliminary approval and direct notice in a reasonable manner to all class members who would be bound by the settlement if the parties

provide sufficient information to the court to show that the court will likely be able to: (1) "approve the proposal under Rule 23(e)(2)"; and (2) "certify the class for purposes of judgment on the [settlement] proposal." Fed. R. Civ. P. 23(e)(1)(B); see Macy v. GC Services Limited Partnership, 2019 WL 6684522, *1 (W.D. Ky. 2019) ("The standard for preliminary approval was codified in 2018, with Rule 23 now providing for notice to the class upon the parties' showing that the court will likely be able to approve the proposed settlement under the final-approval standard contained in Rule 23(e)(2)."); 4 Newberg on Class Actions § 13:10 (5th ed.) ("In 2018, Congress codified this approach into Rule 23. Rule 23(e)(1)(B) now sets forth the grounds for the initial decision to send notice of a proposed settlement to the class[.]").

"At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." Spann, 314 F.R.D. at 319 (internal quotation marks omitted); see Bronson v. Samsung Elecs. Am., Inc., 2019 WL 5684526, *7 (N.D. Cal. 2019) (same); see also 2018 Adv. Comm. Notes to Amendments to Rule 23(e)(1) (The types of information that should be provided to the court in deciding whether to send notice – i.e., that it will likely approve the settlement under Rule 23(e)(2) and certify the class for purposes of settlement – "depend on the specifics of the particular class action and proposed settlement." "[G]eneral observations" as to the types of information that should be provided include, but are not limited to, the following: (1) "the extent and type of benefits that the settlement will confer on the members of the class" and if "funds are . . . left unclaimed, the settlement agreement ordinarily should address the distribution of those funds"; (2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation"; (3) "[i]nformation about the extent of discovery completed in the litigation or in parallel actions"; (4) "information about the existence of other pending or anticipated litigation on behalf of class members involving claims that would be released under the proposal"; (5) "the proposed handling of an award of attorney's fees under Rule 23(h)"; (6) "any agreement that must

1  be identified under Rule 23(e)(3)"; and (7) "any other topic that [the parties] regard as pertinent

2  to the determination whether the proposal is fair, reasonable, and adequate.").

3  **DISCUSSION**

4  I.    CLASS CERTIFICATION.

5        A.    Rule 23(a) Requirements.

6              1.    **Numerosity**.

7        A putative class may be certified only if it "is so numerous that joinder of all members is

8  impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  "Although the size of the class is not the sole

9  determining factor, . . . where a class is large in numbers, joinder will usually be impracticable."

10  A.B. v. Hawaii State Department of Education, 30 F.4th 828, 835 (9th Cir. 2022) (internal quotation

11  marks omitted); see Jordan v. Cty. of Los Angeles, 669 F.2d 1311, 1319 (9th Cir.), vacated on

12  other grounds by Cty. of Los Angeles v. Jordan, 459 U.S. 810, 103 S.Ct. 35 (1982) (class sizes

13  of 39, 64, and 71 are sufficient to satisfy the numerosity requirement).  "As a general matter,

14  courts have found that numerosity is satisfied when class size exceeds 40 members[.]"  Slaven

15  v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); see Tait v. BSH Home Appliances Corp.,

16  289 F.R.D. 466, 473-74 (C.D. Cal. 2012) (same).

17        Here, the class is so numerous that joinder is impracticable.  The settlement class includes

18  approximately 389 members, (see Dkt. 62-1, Memo at 10), which easily exceeds the minimum

19  threshold for numerosity.

20              2.    **Commonality**.

21        The commonality requirement is satisfied if "there are questions of law or fact common to

22  the class[.]"  Fed. R. Civ. P. 23(a)(2).  Proof of commonality under Rule 23(a) is "less rigorous"

23  than the related preponderance standard under Rule 23(b)(3).  See Hanlon v. Chrysler Corp., 150

24  F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds as recognized by Castillo v. Bank of

25  Am., NA, 980 F.3d 723 (9th Cir. 2020); Mazza, 666 F.3d at 589.  Commonality requires plaintiffs

26  to demonstrate that their claims "depend upon a common contention . . . [whose] truth or falsity

27  will resolve an issue that is central to the validity of each one of the claims in one stroke."  Dukes,

28  564 U.S. at 350, 131 S.Ct. at 2551; see Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168,

1172 (9th Cir. 2010) (The commonality requirement demands that "class members' situations

share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full

presentation of all claims for relief.") (internal quotation marks omitted).   "The plaintiff must

demonstrate the capacity of classwide proceedings to generate common answers to common

questions of law or fact that are apt to drive the resolution of the litigation." Mazza, 666 F.3d at

588 (internal quotation marks omitted). "This does not, however, mean that every question of law

or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question

of law or fact." Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (emphasis

and internal quotation marks omitted); see Mazza, 666 F.3d at 589 (characterizing commonality

as a "limited burden[,]" stating that it "only requires a single significant question of law or fact").

"The existence of shared legal issues with divergent factual predicates is sufficient, as is a

common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150

F.3d at 1019.

        This case involves common class-wide questions that are apt to drive the resolution of the

litigation.  Here, the central question is the lawfulness of defendant's compensation policies, and

whether such policies resulted, for example, in defendant's failure to pay minimum wages, provide

lawful rest breaks, or provide complete and accurate wage statements.  (See Dkt. 53, FAC at ¶¶

12-30, 32).  Under the circumstances, the court finds that plaintiff has satisfied the commonality

requirement.  See, e.g., McConville v. Renzenberger, Inc., 2019 WL 9408103, *5 (C.D. Cal. 2019)

("This case involves common class-wide issues that are apt to drive the resolution of plaintiff's

claims. There are significant common questions as to whether [defendant]'s meal-and-rest-period

policies were legally valid; whether [defendant] failed to pay all straight and overtime wages owed

to  class  members;  and  whether  [defendant]  failed  to  provide  accurate,  itemized  wage

statements."); Taylor v. FedEx Freight, Inc., 2016 WL 1588405, *3 (E.D. Cal. 2016) ("Whether

[defendant's] mileage pay plan fail[ed] to separately compensate for all time worked including

non-driving activities, and whether such failure [was] unlawful under the Labor Code and IWC

Wage Order . . . are common questions of law and facts to the proposed settlement class.  These

common  questions  of  law  or  fact  shared  by  all  the  proposed  settlement  class  members  are

sufficient to satisfy the commonality requirement."); Clesceri v. Beach City Investigations & Protective Servs., Inc., 2011 WL 320998, *5 (C.D. Cal. 2011) (finding commonality requirement met for preliminary approval because "the settlement class members did not receive proper rest breaks; [] the settlement class members did not receive proper meal breaks; [and] the settlement class members did not receive adequate wage statements in compliance" with the Labor Code).

### 3. **Typicality**.

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks omitted). To demonstrate typicality, plaintiff's claims must be "reasonably co-extensive with those of absent class members[,]" although "they need not be substantially identical." Hanlon, 150 F.3d at 1020; see Ellis, 657 F.3d at 984 ("Plaintiffs must show that the named parties' claims are typical of the class."). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Ellis, 657 F.3d at 984 (internal quotation marks omitted).

Here, the claims of named plaintiff are typical of the claims of the class. Bonsangue, like the putative class members, was employed by defendant during the relevant time period, and was paid pursuant to the same employment policies and procedures as the putative class members. (See Dkt. 62-1, Memo at 12); (Dkt. 53, FAC). Thus, Bonsangue's claims and the claims of the class arise from the same factual basis and are based on the same legal theories, i.e., that defendant's employment policies and practices failed to guarantee that class members would be paid, among other things, proper minimum wages and all wages upon separation. (See Dkt. 62-1, Memo at 12). Finally, defendant has not raised any facts that would subject plaintiff "to unique defenses which threaten to become the focus of the litigation." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). In short, Bonsangue has satisfied the typicality requirement.

4.   **Adequacy of Representation**.

"The named Plaintiffs must fairly and adequately protect the interests of the class." Ellis, 657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)).  "To determine whether [the] named plaintiffs will adequately represent a class, courts must resolve two questions:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Id. (internal quotation marks omitted).  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."  Id.

Here, the proposed class representative, Bonsangue, has no individual claims separate from the class claims, (see, generally, Dkt. 53, FAC), and does not appear to have any conflicts of interest with the absent class members.  (See Dkt. 62-1, Memo at 12); see, e.g., Barbosa v. Cargill Meat Sols. Corp, 297 F.R.D. 431, 442 (E.D. Cal. 2013) ("[T]here is no apparent conflict of interest between the named Plaintiffs' claims and those of the other Class Members' – particularly because the named Plaintiffs have no separate and individual claims apart from the Class.").  Moreover, plaintiff states that he "understands that [he] must consider and protect the interests of the class members and place their interests before [his] own interests."  (Dkt. 62-4, Declaration of Chris Bonsangue at ¶ 3).  In short, "[t]he adequacy-of-representation requirement is met here because Plaintiff[] ha[s] the same interests as the absent Class Members[.]"  Barbosa, 297 F.R.D. at 442.

Finally, as noted earlier, adequacy "also factors in competency and conflicts of class counsel."  Amchem, 521 U.S. at 626 n. 20, 117 S.Ct. at 2251.  Here, the Settlement Agreement provides that the court appoint Lavi & Ebrahimian, LLP as class counsel.  (See Dkt. 62-3, Settlement Agreement at ¶ 13) (defining class counsel); (Dkt. 62, Motion).  Having reviewed the declaration of proposed class counsel, (see Dkt. 62-2, Huether Decl. at ¶¶ 40-44), the court finds that counsel are reasonably competent, and that there are no issues as to the adequacy of representation.  See Barbosa, 297 F.R.D. at 443 ("There is no challenge to the competency of the

1    Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent

2    counsel who have litigated numerous class action cases.").

3          B.      Rule 23(b) Requirements.

4         Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can

5    be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (internal

6    quotation marks omitted). The rule requires two different inquiries, specifically a determination as

7    to whether: (1) "questions of law or fact common to class members predominate over any

8    questions affecting only individual members[;]" and (2) "a class action is superior to other available

9    methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

10          1.     **Predominance**.

11         "[T]he general rule [is] that predominance is easier to satisfy in the settlement context."

12    Jabbari v. Farmer, 965 F.3d 1001, 1006 (9th Cir. 2020). "To determine whether a class satisfies

13    the [predominance] requirement, a court pragmatically compares the quality and import of

14    common questions to that of individual questions." Id. at 1005. "[T]he predominance analysis

15    under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the

16    case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by

17    representation." Abdullah, 731 F.3d at 964 (internal quotation marks omitted); see Amchem, 521

18    U.S. at 623, 117 S.Ct. at 2249 ("The Rule 23(b)(3) predominance inquiry tests whether proposed

19    classes are sufficiently cohesive to warrant adjudication by representation."). "If a common

20    question will drive the resolution [of the litigation], even if there are important questions affecting

21    only individual members, then the class is sufficiently cohesive to warrant adjudication by

22    representation." Jabbari, 965 F.3d at 1005 (internal quotation marks omitted); see Abdullah, 731

23    F.3d at 964 ("Rule 23(b)(3) requires [only] a showing that questions common to the class

24    predominate, not that those questions will be answered, on the merits, in favor of the class.")

25    (internal quotation marks omitted) (brackets in original). Finally, the class damages must be

26    sufficiently traceable to plaintiff's liability case. See Comcast Corp. v. Behrend, 569 U.S. 27, 35,

27    133 S.Ct. 1426, 1433 (2013).

28

1    For the reasons discussed above, see supra at § I.A.2., the court is persuaded that

2    common questions predominate over individual questions.  See Tyson Foods, Inc. v. Bouaphakeo,

3    577 U.S. 442, 453, 136 S.Ct. 1036, 1045 (2016) ("When one or more of the central issues in the

4    action are common to the class and can be said to predominate, the action may be considered

5    proper under Rule 23(b)(3) even though other important matters will have to be tried separately,

6    such as damages or some affirmative defenses peculiar to some individual class members.")

7    (internal quotation marks omitted); Senne v. Kansas City Royals Baseball Corp., 934 F.3d 918,

8    938 (9th Cir. 2019) ("[P]redominance in employment cases is rarely defeated on the grounds of

9    differences among employees so long as liability arises from a common practice or policy of an

10   employer.") (internal quotation marks omitted).  Finally, the relief sought applies to all class

11   members and is traceable to plaintiff's liability case.  See Comcast, 569 U.S. at 35, 133 S.Ct. at

12   1433.  In short, the court is persuaded that "[a] common nucleus of facts and potential legal

13   remedies dominates this litigation."  Hanlon, 150 F.3d at 1022.

14        2.    **Superiority**.

15   "The superiority inquiry under Rule 23(b)(3) requires determination of whether the

16   objectives of the particular class action procedure will be achieved in the particular case" and

17   "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."

18   Hanlon, 150 F.3d at 1023.  Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to

19   superiority.  See Fed. R. Civ. P. 23(b)(3)(A)-(D).

20        The first factor considers "the class members' interests in individually controlling the

21   prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  "This factor weighs

22   against class certification where each class member has suffered sizeable damages or has an

23   emotional stake in the litigation."  Barbosa, 297 F.R.D. at 444.  Here, plaintiff does not assert

24   claims for emotional distress, nor is there any indication that the amount of damages any individual

25   class member could recover is significant or substantially greater than the potential recovery of

26   any other class member.  (See, generally, Dkt. 53, FAC); (Dkt. 62-1, Memo at 14).  The alternative

27   method of resolution – pursuing individual claims for a relatively modest amount of damages –

28   would likely never be brought, as "litigation costs would dwarf potential recovery."  Hanlon, 150

1  F.3d at 1023; see Leyva v. Medline Indus., Inc., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the

2  small size of the putative class members' potential individual monetary recovery, class certification

3  may be the only feasible means for them to adjudicate their claims.  Thus, class certification is also

4  the superior method of adjudication."); Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 537

5  (C.D. Cal. 2011) ("Given the small size of each class member's claim, class treatment is not

6  merely the superior, but the only manner in which to ensure fair and efficient adjudication of the

7  present action.").   In short, "there is no evidence that Class members have any interest in

8  controlling prosecution of their claims separately nor would they likely have the resources to do

9  so."  Munoz v. PHH Corp., 2013 WL 2146925, *26 (E.D. Cal. 2013).

10        The second factor is "the extent and nature of any litigation concerning the controversy

11  already begun by or against class members[.]"  Fed. R. Civ. P. 23(b)(3)(B).  While any class

12  member that wishes to control his or her own case may opt out of the class, see Fed. R. Civ. P.

13  23(c)(2)(B)(v), "other pending litigation is evidence that individuals have an interest in controlling

14  their own litigation[.]"  2 Newberg on Class Actions § 4:70 (5th ed. 2012) (emphasis omitted).

15  Here, there is no pending related matter of which plaintiff is aware.  (Dkt. 62-1, Memo at 14).

16        The third factor is "the desirability or undesirability of concentrating the litigation of the

17  claims in the particular forum[,]" and the fourth factor is "the likely difficulties in managing a class

18  action."  Fed. R. Civ. P. 23(b)(3)(C)-(D).  As noted above, "[i]n the context of settlement . . . the

19  third and fourth factors are rendered moot and are irrelevant."  Barbosa, 297 F.R.D. at 444;  see

20  Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class

21  certification, a district court need not inquire whether the case, if tried, would present intractable

22  management problems, . . . for the proposal is that there be no trial.") (citation omitted); In re

23  Hyundai, 926 F.3d at 556-57 ("The criteria for class certification are applied differently in litigation

24  classes and settlement classes.  In deciding whether to certify a litigation class, a district court

25  must be concerned with manageability at trial.  However, such manageability is not a concern in

26  certifying a settlement class where, by definition, there will be no trial.").

27        The only factors in play here weigh in favor of class treatment.  Further, the filing of

28  separate suits by potentially hundreds of other class members "would create an unnecessary

1  burden on judicial resources." Barbosa, 297 F.R.D. at 445.  Under the circumstances, the court

2  finds that the superiority requirement is satisfied.

3  II.    FAIRNESS,    REASONABLENESS,    AND    ADEQUACY    OF    THE    PROPOSED

4         SETTLEMENT.

5         A.    The Settlement is the Product of Arm's-Length Negotiations.

6         Pursuant to Rule 23(e)(2)(B), the court must evaluate whether the settlement was

7  negotiated at arm's length.  Here, plaintiff's counsel engaged in "extensive informal exchange of

8  documents, data, and information[,]" (see Dkt. 62-1, Memo at 16); (Dkt. 62-2, Huether Decl. at ¶

9  7), and reached a settlement during a mediation with an experienced mediator.  (See Dkt. 62-3,

10 Huether Decl. at ¶ 8); see also 2018 Adv. Comm. Notes to Amendments to Rule 23(e)(2) (noting

11 that "the involvement of a neutral or court-affiliated mediator or facilitator in th[e] negotiations may

12 bear on whether they were conducted in a manner that would protect and further the class

13 interests").  Counsel "represents that they have conducted a thorough investigation into the facts

14 of this case and have diligently pursued an investigation of [c]lass [m]embers' claims against

15 Defendant, including research of the applicable law and the potential defenses and review of

16 relevant documents and data."  (Dkt. 62-3, Huether Decl. at ¶ 9).  Counsel "engaged an outside

17 expert to analyze" some of the data provided by defendant, "which provided Plaintiff's counsel with

18 details including when and if meal periods were taken and the net gain due to rounding."  (Id. at

19 ¶ 7).

20        Based on the evidence and record before the court, the court is persuaded that the parties

21 thoroughly investigated and considered their own and the opposing parties' positions.  The parties

22 had a sound basis for measuring the terms of the settlement against the risks of continued

23 litigation, and there is no evidence that the settlement is the product of fraud or overreaching by,

24 or collusion between, the negotiating parties.  See Spann, 314 F.R.D. at 324-25 (finding that a

25 class action settlement was the product of arm's-length negotiations where there was no evidence

26 of collusion or fraud in the settlement negotiations); Rodriguez v. W. Publ'g Corp., 563 F.3d 948,

27 965 (9th Cir. 2009) (affirming court's final approval of settlement where there was no "no evidence

28 of fraud, overreaching, or collusion").

1    B.    The Amount Offered in Settlement Falls Within a Range of Possible Judicial

2          Approval and Is a Fair and Reasonable Outcome for Class Members.

3          1.    **Recovery for Class Members.**

4          As noted above, class members will share in a non-reversionary gross settlement amount

5    of $190,000.  (Dkt. 62-3, Settlement Agreement at ¶ 26, 49).  If the requested attorney's fees and

6    costs, the LWDA payment, settlement administration costs, and the service award is approved,

7    the average recovery per class member is expected to be $251.92.  (Dkt. 62-1, Memo at 2); (Dkt.

8    62-2, Huether Decl. at ¶ 38).  According to plaintiff, the "settlement amount is approximately 42%

9    of the discounted damages allegedly owed to [c]lass [m]embers[,]" (Dkt. 62-1, Memo at 17); (Dkt.

10   62-2, Huether Decl. at ¶ 26), and is fair and adequate given that defendant's "liability for the

11   released claims is very limited[,]" (Dkt. 62-1, Memo at 18, 20, 22); (Dkt. 62-2, Huether Decl. at ¶¶

12   14, 16, 18, 22, 36) (detailing defendants' defenses to the claims), and the risks involved in this

13   action.  (Dkt. 62-1, Memo at 20).  For instance, with respect to the meal and rest period claims,

14   plaintiff determined that the claims had little, if any, value because they were preempted by the

15   Federal Motor Carrier Safety Administration ("FMCSA") and the DOT Pipeline and Hazardous

16   Materials Safety Administration ("PHMSA") regulations.  (See Dkt. 62-1, Memo at 21); (see also

17   Dkt. 62-2, Huether Decl. at ¶ 16) (noting that the FMCSA determined in 2018 that federal law

18   preempts California's meal and rest break rules as applied to property-carrying commercial motor

19   vehicle drivers covered by the FMCSA's hours of service regulations); 49 U.S.C. § 31141(a)

20   (providing that "[a] State may not enforce a State law or regulation on commercial motor vehicle

21   safety that the" FMCSA has determined is preempted); International Brotherhood of Teamsters,

22   Local 2785 v. Federal Motor Carrier Safety Administration, 986 F.3d 841 (9th Cir. 2021) (denying

23   petitions for review of FMCSA's determination that federal law preempts California's meal and rest

24   break rules).

25         Under the circumstances, the court is persuaded that the settlement is fair, reasonable, and

26   adequate, particularly when viewed in light of the litigation risks and the costs, risks, and delay of

27   trial and appeal.  See Fed. R. Civ. P. 23(e)(1)(B)(i) & (e)(2)(C)(i); 2018 Adv. Comm. Notes to

28   Amendments to Rule 23(e)(1) (The types of information that should be provided to the court

1  deciding whether to grant preliminary approval  includes, among other things:  (1) "the extent and

2  type of benefits that the settlement will confer on the members of the class"; and (2) "information

3  about the likely range of litigated outcomes, and about the risks that might attend full litigation").

4  Here, given the significant risks of litigation coupled with the delays associated with continued

5  litigation, the court is persuaded that the benefits to the class fall within the range of

6  reasonableness.  See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000)

7  (ruling that "the Settlement amount of almost $2 million was roughly one-sixth of the potential

8  recovery, which, given the difficulties in proving the case, [wa]s fair and adequate"); In re Uber,

9  2017 WL 2806698, *7 (N.D. Cal. 2017) (granting preliminary approval of settlement that was worth

10  7.5% or less of the expected value); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234,

11  1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the

12  potential recovery does not, in and of itself, mean that the proposed settlement is grossly

13  inadequate and should be disapproved.") (internal quotation marks omitted).  Finally, the

14  settlement promotes enforcement of wage and hour laws in that it provides for recovery for the

15  PAGA claim.[8]  (See Dkt. 62-3, Settlement Agreement at ¶¶ 24-25).

16           2.    **Release of Claims**.

17           The court must also consider whether the settlement contains an overly broad release of

18  liability.  See 4 Newberg on Class Actions § 13:15 (5th ed.) ("Beyond the value of the settlement,

19  courts [have] rejected preliminary approval when the proposed settlement contain[s] obvious

20  substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v. Asus

21  Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed

22  settlement that provided defendant a "nationwide blanket release" in exchange for payment "only

23  on a claims-made basis[,]" without the establishment of a settlement fund or any other benefit to

---

8    Although the LWDA received notice of the settlement, (see Dkt. 67, Supplemental
Declaration of Melissa A. Huether [] at ¶ 6), it did not object or respond, (see id.), which the court
construes as consent to the proposed settlement.  See Echavez v. Abercrombie & Fitch Co., Inc.,
2017 WL 3669607, *3 (C.D. Cal. 2017) ("[T]he Court finds persuasive that LWDA was invited to
file a response to the proposed settlement agreement in this case and elected not to file any
objections or opposition thereto.  The Court infers LWDA's non-response is tantamount to its
consent to the proposed settlement terms, namely the proposed PAGA penalty amount.").

the class).  Here, class members who do not exclude themselves from the settlement will release "all claims under state, federal or local law, whether statutory, common law or administrative law arising out of or related to all claims and allegations made or which could have been made in the Class Action and/or PAGA Action from October 2, 2016 through November 1, 2021, including, but not limited to, allegations of alleged: meal period violations; rest period violations; failure to pay wages; wage statement violations; waiting time penalties; civil penalties, including penalties under . . . PAGA; violations of [the UCL]"  (Dkt. 62-3, Settlement Agreement at ¶¶ 37, 76).

Under the circumstances, the court finds that the release adequately balances fairness to absent class members with defendant's business interest in ending this litigation.  See, e.g., Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

C.     The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the Class Representative.

Pursuant to Rule 23(e)(2)(D), the court must evaluate whether the settlement "treats class members equitably relative to each other."  The Ninth Circuit has "repeatedly held that reasonable incentive awards to class representatives are permitted," In re Apple Inc. Device Performance Litig., 50 F.4th 769, 785 (9th Cir. 2022) (internal quotation marks omitted), and has instructed "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).  The court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest. See id. at 1165.  In deciding whether an incentive award is warranted, relevant factors include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and any financial or reputational risks the plaintiff faced." In re Apple Inc. Device Performance Litig., 50 F.4th at 786 (internal quotation marks omitted).

1       Here, the Settlement Agreement provides for a service payment of up to $5,000 for plaintiff.

2    (See Dkt. 62-3, Settlement Agreement at ¶¶ 18, 51).  Under the circumstances here, the court

3    tentatively finds that the requested incentive payment is reasonable.

4       D.    Class Notice and Notification Procedures.

5       Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner

6    to all class members who would be bound by the proposal[.]"  Fed. R. Civ. P. 23(e)(1)(B).  Rule

7    23(c)(2) requires the "best notice that is practicable under the circumstances, including individual

8    notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements

9    for classes certified under Rule 23(b)(3)).

10       "The standard for the adequacy of a settlement notice in a class action under either the Due

11    Process Clause or the Federal Rules is measured by reasonableness."  Wal-Mart Stores, Inc. v.

12    Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005); Low v. Trump Univ., LLC, 881 F.3d 1111, 1117

13    (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action

14    proceedings is one of reasonableness.") (internal quotation marks omitted).  A class action

15    settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient

16    detail to alert those with adverse viewpoints to investigate and to come forward and be heard."

17    Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks

18    omitted); see Gooch v. Life Invs. Ins. Co. of Am., 672 F.3d 402, 423 (6th Cir. 2012) (Settlement

19    notices "are sufficient if they inform the class members of the nature of the pending action, the

20    general terms of the settlement, that complete and detailed information is available from the court

21    files, [and] that any class member may appear and be heard at the hearing[.]").  The notice should

22    provide sufficient information to allow class members to decide whether they should accept the

23    benefits of the settlement, opt out and pursue their own remedies, or object to the terms of the

24    settlement but remain in the class.  See In re Integra Realty Res., Inc., 262 F.3d 1089, 1111 (10th

25    Cir. 2001) ("The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise'

26    the class members of the terms of the proposed settlement and of their options.") (internal

27    quotation marks omitted).

28

1    Here, class members will receive notice by first class mail and email, (see Dkt. 62-3,

2    Settlement Agreement at ¶ 60), which will consist of the Notice of Proposed Class Action

3    Settlement, (see id., Exh. A, "Notice") and Request for Exclusion from Class Action Settlement.

4    (Id. at ECF 1198).  The Notice describes the nature of the action and the claims alleged.  (See id.,

5    Notice at 1-2); see also Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii).  It provides the definition of the class,

6    (see Dkt. 62-3, Exh. A, Notice at 1); see also Fed. R. Civ. P. 23(c)(2)(B)(ii), and explains the terms

7    of the settlement, including the settlement amount, the distribution of that amount, and the release.

8    (See Dkt. 62-3, Exh. A, Notice at 2-5).  It includes an explanation that lays out the class members'

9    options under the settlement: they may remain in the class, object to the settlement but still remain

10   in the class, or exclude themselves from the settlement and pursue their claims separately against

11   defendant.  (See id. at 4-6); see also Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi).  The Notice also explains

12   the procedures for objecting to the settlement, (see Dkt. 62-3, Exh. A, Notice at 5-6), and provides

13   information about the Final Fairness Hearing.  (See id. at 1).  Finally, the parties request that

14   Simpluris be appointed as settlement administrator to implement the notice process.  (See Dkt.

15   62, Motion).

16   Based on the foregoing, the court finds there is no alternative method of distribution that

17   would be more practicable here, or any more reasonably likely to notify the class members.  Under

18   the circumstances, the court finds that the procedure for providing notice and the content of the

19   class notice constitute the best practicable notice to class members and comply with the

20   requirements of due process.

21   E.    Summary.

22   The court's preliminary evaluation of the Settlement Agreement does not disclose grounds

23   to doubt its fairness "such as unduly preferential treatment of class representatives or segments

24   of the class, inadequate compensation or harms to the classes, . . . or excessive compensation

25   for attorneys." Manual for Complex Litigation § 21.633 at 321 (4th ed. 2004); see also Spann, 314

26   F.R.D. at 323.

27

28

## **CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1.    Plaintiff's Third Renewed Motion for Preliminary Approval of Class Action and PAGA Settlement and Class Certification **(Document No. 62)** is **granted** upon the terms and conditions set forth in this Order.

2.  The court preliminarily certifies the California Class, as defined in ¶ 15 of the Settlement Agreement (Dkt. 62-3), for the purposes of settlement.

3.   The court preliminarily appoints Chris Bonsangue as the class representative for settlement purposes.

4.  The court preliminarily appoints Lavi & Ebrahimian, LLP as class counsel for settlement purposes.

5.  The court preliminarily finds that the terms of the settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6.  The court approves the form, substance, and requirements of the class Notice, (Dkt. 62-3, Settlement Agreement, Exh. A).  The proposed manner of notice of the settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7.   The court appoints Simpluris as settlement administrator. Simpluris shall complete dissemination of class notice, in accordance with the Settlement Agreement, no later than **February 22, 2023**.

8.  Plaintiff shall file a motion for an award of class representative incentive payment and attorney's fees and costs no later than **March 8, 2023,** and notice it for hearing for the date of the final approval hearing set forth below.

9.  Any class member who wishes to: (a) object to the settlement, including the requested attorney's fees, costs and incentive award; or (b) exclude him or herself from the settlement must file his or her objection to the settlement, or request exclusion no later than **April 10, 2023**, in accordance with the Notice and this Order.

10.  Plaintiff shall, no later than **April 21, 2023,** file and serve a motion for final approval of the settlement and a response to any objections to the settlement.  The motion shall be noticed for hearing for the date of the final approval hearing set forth below.

11.  Defendant may file and serve a memorandum in support of final approval of the Settlement Agreement and/or in response to objections no later than **April 28, 2023**.

12.  Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs or incentive award, shall, no later than **April 28, 2023**, file with the court a Notice of Intent to Appear at Fairness Hearing.

13.  A final approval (fairness) hearing is hereby set for **June 1, 2023,** at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement as well as the award of attorney's fees and costs to class counsel, and incentive award to the class representative.

14.  All proceedings in the Action, other than proceedings necessary to carry out or enforce the Settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 3rd day of January, 2023.

_____
/s/
Fernando M. Olguin
United States District Judge